21-08422MB

**AFFIDAVIT IN SUPPORT OF**

**APPLICATION FOR SEARCH WARRANT**

I, Kevin Jackson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Bureau of Indian Affairs (BIA), Division of Drug Enforcement (DDE) within the Department of Interior and have been since April 2019. I have been assigned as a Task Force Officer to the Native American Targeted Investigations of Violent Enterprises (NATIVE) Task Force U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since December 2019. I have attended two (2) basic law enforcement academies, including Land Management Police Training (LMPT) at the Federal Law Enforcement Training Center (FLETC) in Artesia, NM, and Department of Interior-Investigator Training Program (DOI-ITP) at FLETC located in Glynco, GA. Since attending these basic training courses, I have also attended numerous other basic and advanced law enforcement training courses which covered topics including drug enforcement, crime scene investigation, evidence collection and handling, laws relating to search and seizure, as well as criminal procedures and other topics. During my career as a federal law enforcement officer, I have completed the Basic Narcotic Training (BNT) course in which I received training in the investigation and enforcement actions of drug crimes including but not limited to the unlawful possession and trafficking of methamphetamine, marijuana, cocaine and heroin and other controlled substances, I received training regarding investigative techniques relating to violations of federal laws, including the application and execution of search and arrest warrants. As

such, I am an investigative law enforcement officer authorize to preform duties under 25 USC 2803.

2. Prior to becoming a Special Agent, I was a Cherokee Nation Deputy Marshal from March 2014 to March 2019 in Tahlequah, Oklahoma. In this assignment I was responsible for patrolling within the jurisdictional boundaries of the Cherokee Nation. This assignment included responding to calls concerning misdemeanors and felonies under Federal, State, and Tribal laws. I investigated, apprehended, arrested, and detained persons charged with violations of Title 18 United States Code, State law or various tribal law.

3. I am currently assigned to the NATIVE Task Force as Special Agent/Task Force Officer, located in Sells, Arizona. In connection with my official duties as a Task Force Officer with NATIVE, I am responsible for conducting investigations into violations of Title 21 of the United States Code and other federal criminal statutes. During my career, I have participated in numerous narcotics investigations. These investigations have resulted in the arrests of persons for drug offenses and the seizure of marijuana, heroin, methamphetamine, and cocaine. During the course of these investigations I have conducted or participated in physical and electronic surveillance; executed federal search warrants; conducted numerous debriefings of informants, cooperating defendants, and other individuals cooperating with the United States; seized and evaluated items of evidence, narcotics records, and financial documents.

4. Through my training and experience, I have become familiar with the operations and practices of drug, weapons, and human smuggling organizations. In particular, I am familiar with the manner and methods used by smuggling organizations to illegally import, export, distribute and sell illegal drugs or firearms. I am also familiar with

tactics employed by smuggling organizations to counter law enforcement techniques. I am familiar with counter-surveillance efforts, how to decipher ledgers, and how smuggling organizations acquire firearms through straw purchasing for eventual export from the United States, in violation of federal law.

5. Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug-traffickers commonly use cellular telephones to communicate with their narcotics associates and to facilitate the commission of their narcotics offenses. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of narcotics associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the drug-trafficking associates and/or activity, all of which can be used to identify and locate narcotics-trafficking associates, to identify methods of operation of the drug-trafficking organizations (DTOs), and to corroborate other evidence obtained during the course of the current investigation.

6. By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (b) interviewing witnesses and suspects relative to the illegal trafficking of drugs; and (c) functioning as a case agent,

entailing the supervision of specific investigative functions involving the trafficking of drugs.

7. In the course of conducting drug investigations, I have personally interviewed persons involved in the distribution of illegal drugs. I have consulted with other experienced investigators concerning the practices of drug-traffickers and the best methods of investigating them. In preparing this Affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation. Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

8. Your Affiant submits this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet (the Target Smartphone, defined below), and the extraction from the Target Smartphones of electronically stored information further described in Attachment B hereto. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Smartphone, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the Target Smartphone.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

9. The electronic communication device to be examined is described as: one (1) LG Phone Black Case, which is assigned International Mobile Equipment Identity (IMEI) 351971112393423 (hereinafter referred to as the "Target

Smartphone"). The Target Smartphone is currently location in the low-risk evidence vault at the HSI Sells office located in Sells, Arizona. The particular Target Smartphone to be searched pursuant to the attached Application is further described in Attachment A hereto.

**BACKGROUND ON SMARTPHONES**

10. Based upon my knowledge, training, and experience, as well as information related to your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, your Affiant knows that certain types of cellular telephones referred to as "smartphones" (such as the Target Smartphone) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

11. As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used the Target Smartphone as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

12. As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored within the Target Smartphone. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

13. Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as the Target Smartphone) can contain other forms of electronic evidence that are not user-generated. In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

f. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

g. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence

or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user. All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

h. The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used. Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN DRUG-TRAFFICKING ORGANIZATIONS

14. Based upon my knowledge, experience, and training in DTO investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in DTOs. Individuals involved in drug-trafficking activity tend to:

a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b. Collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

c. Possess and maintain records reflecting bank transactions and/or money transfers;

d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Smartphone). These records are often maintained for several years and are kept close in close proximity to the drug-trafficker, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

e. Correspond with and/or meet with other drug-trafficking associates to share drug-trafficking information and/or materials;

f. Retain correspondence from other drug-trafficking co-conspirators relating to drug-trafficking activity; and

g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted drug-trafficking activity.

**PROBABLE CAUSE**

15. Your Affiant submits that there is probable cause to believe that the Target Smartphone requested to be searched may contain evidence identifying: (1) cellular telephone numbers used by drug-trafficking associates; (2) telephone calls conducted with drug-trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug-trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug-trafficking associates; (5) electronic mail and social media internet sites accessed by the user of the Target Smartphones; and (6) usernames and/or passwords utilized by the user of the Target Smartphones to access electronic mail and social media internet sites.

16. Based on your Affiant's training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, your Affiant knows that DTOs utilize cellular telephones (such as the Target Smartphone) to communicate when conducting their illegal activity, utilizing voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. These devices are utilized in furtherance of the crime by coordinating the transport and distribution of controlled substances, the collection and movement of currency as well as communicating with members of the DTO about the specific operations of that DTO.

17. U.S. Immigrations and Custom Enforcement, Homeland Security Investigations (HSI) Special Agents (SA) and Task Force Officers (TFOs)

assigned to the Sells, Arizona office have been conducting investigations, targeting a transporting organization that operates in the area Sells, Arizona of Tohono O'odham Nation Reservation. The organization has been involved in alien and narcotics smuggling. They use the reservation area to load their narcotics in a vehicle and then drive north to Phoenix, Arizona. During the investigation of this smuggling event, TOPD Officer recorded Mexican telephone number "52 662 203 9817". After further investigation, this number is associated with another DTO. Fellow Agents had verified this DTO is operating in Sells, AZ.

18. On December 14, 2020, Tohono O'odham Nation Police Department (TOPD) Communications received a call from an anonymous caller, reporting a white short bed Dodge Ram that had left the area of San Miguel Village in the Chukut Kuk District which is located on Tohono O'odham Nation Reservation, which is adjacent to the Mexico Border. The caller advised the same vehicle had previously been observed in the same area, within the last week, loading something in the hood of the vehicle, then drove away.

19. TOPD Officer reported to of observed a vehicle matching the description the anonymous caller gave. At approximately 1755 hours the TOPD Officer reported to have performed a traffic stop on the vehicle for a traffic violation in Sells, Arizona which is located on Tohono O'odham Nation Reservation. The vehicle is a White 1999 Dodge Ram Pickup bearing Arizona tag (PCA5BJA). TOPD Officer stated the driver of the vehicle exited the vehicle upon the traffic stop. The driver of the vehicle was later identified as Ralph ANTONE.

TOPD Officer reported that when he went to speak with ANTONE he observed ANTONE to be on a phone call and attempting to hide the phone in his front pocket. TOPD Officer stated that he asked ANTONE to end the call. ANTONE ended the call and asked to contact his lawyer.

20. TOPD Officer reported that ANTONE appeared to be extremely nervous after TOPD Officer requested a Canine unit assistance from the United States Border Patrol (USBP). TOPD Officer stated ANTONE was making conversation by asking what was going to happen to the truck, if he was going to be arrested, and asking to call his father and his attorney. During the traffic stop TOPD Officer placed two of ANTONE's smartphones, that was located on ANTONE's person, on the hood of the Officers patrol vehicle. One of the smartphones is a LG Phone Black Case, which is assigned International Mobile Equipment Identity (IMEI) 351971112393423(identified above as Target Smartphone). The other phone is a Black IPhone FCCID: BCG-E3085A. The TOPD Officer noticed both of ANTONE's phones started receiving phone calls. TOPD Officer was able to record two of the phone numbers the Targets smartphone were receiving. One of the numbers documented was +52 662 203 9817 with the word "Sonora" printed under the number. This number is associated with a known DTO (see paragraph 17 above). The second number documented was +662-189-8870.

21. A USBP Canine handler responded and deployed his canine. The canine alerted to an odor it is trained to detect emanating from the front passenger

seat and the spare tire. The officers removed the spare tire and placed it away from the vehicle. The canine alerted to the spare tire a second time. Officers opened the spare tire and discovered 20 packages wrapped in a thin white cloth material and cellophane tape. A representative sample of the contents of the packages tested positive for the characteristics of cocaine. The cocaine had a total weight of 21.75 kilograms. Before the TOPD Officer placed ANTONE in the back seat of his vehicle, the Officer conducted a search of ANTONE's person and found large amounts of cash in his front pockets. The total amount of cash in ANTONE's pockets was $4,711.

22. TOPD Officer reported that during the search of the vehicle Officer's located another smartphone in the driver's side door. The smartphone is a Black Verizon ZTE.

23. ANTONE was arrested and charged with violation of 21 U.S.C. 841 (A)(1) Possession PWITD/ Cocaine.

24. The Target Smartphone was seized per HSI guidelines and stored at the low-risk vault in Sells, AZ.

25. Based on training and experience, your Affiant is aware drug couriers and coordinators routinely communicate via SMS/text message prior to and immediately after conducting drug transactions.

26. Based upon the above, your Affiant believes that probable cause exists to search the Target Smartphone for the items set forth in Attachment B hereto. Your Affiant believes that the Target Smartphone contains evidence relating to the

commission of a criminal offense, that is, manufacture, distribute, or dispense with intent to manufacture, distribute, or dispense, a controlled substance, in violation of Title 21, United States Code, Section 841, as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

Respectfully, submitted this __ day of March 2021.

KEVIN JACKSON Digitally signed by KEVIN JACKSON
Date: 2021.03.16 22:56:07 -07'00'

Kevin Jackson
Special Agent, BIA DDE

Sworn and subscribed before me this 17th day of March 2021.

HONORABLE D. THOMAS FERRARO
United States Magistrate Judge

ATTACHMENT A

The property to be searched is:

one (1) LG Phone Black Case, which is assigned International Mobile Equipment Identity (IMEI) 351971112393423. The Target Smartphone is currently located at the HSI Sells office located in Sells, Arizona.

This warrant authorizes the forensic examination of the Device for the purpose of identifying stored information described in Attachment B.

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEARCHED FOR**

1. Data and/or digital files stored on or accessed through the Target Smartphone (as described in Attachment A) relating to drug-trafficking, wherever it may be stored or found, specifically including:

a. lists of customers and related identifying information;

b. types, amounts, and prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

c. types, amounts of money obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

d. any information related to sources of money or narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

e. all bank records, checks, credit card bills, account information, and other financial records.

2. Electronic correspondence stored on or accessed through the Target Smartphone relating to drug-trafficking, to include emails and attached files, text messages, and instant messaging logs.

3. Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the Target Smartphone.

4. Contact lists stored on or accessed through the Target Smartphone, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5. Evidence of persons who used, owned, or controlled the Target Smartphone.

6. Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the Target Smartphone.